Ruffin, C. J.'
 

 This case presents one of those instances of unhappy misunderstanding between persons of equal respectability, which arises from the defects of memory and an extreme looseness in transacting business. The persons most concerned in feeling in the cause are the two witnesses, Mr. Blum and Mr. Shuman — for the latter, though the party, is really not so in interest, being the mere payee of the note in trust for the bank. It is admitted on all sides, that the plaintiff is entitled to relief in the premises from one or the other of those persons, as no part of the money ever came to his hands. The doubt in the case is, whether the defendant never paid the money to any one, or paid it to Mr. Blum. The defendant avers, that he did pay it to Blum; and the latter as positively affirms, that he did. not. It is the unpleasant task of the Court to decide between them. But in making the decision, it would be no less our inclination than our duty in every
 
 *467
 
 case, to proceed, as far as we may, upon grounds consistent with the integrity of persons, thus implicated, in giving contradictory accounts of the same transaction. Much more should the Court thus act between two persons, occupying stations in society so entirely equal, as the two gentlemen before us seem to do. The one is the Cashier of a bank, and the other was the Cashier for a long, time, and he is now a direct- or of the same bank. It is incumbent on the Court, then, to give both of those persons credit for their characters, in point of uprightness, if we can find any-fair grounds of decision, compatible with such characters. And we believe that there are such grounds, on which we can give our judgment on sound legal principles and leave each of these persons’ reputation unimpeached, at least by us.
 

 In cases, in which credit seems to be so nearly balanced, very often the determination may be safely placed upon the want of preponderating proof on the side, upon which the error rests, and upon an exhibition in that party of a deficiency of that due caution, which prudence required him to use.— For in such a case, negligence, far from that grossness which amounts to fraud, may yet be sufficient to prevent á Court from yielding to the evidence given by a party, who ought to have taken care tq provide better evidence — especially when, according to the common course of business, it would have been proper and easy to provide conclusive proof. And we are free to say, that this view of the present case seems to be decisive against the defendant.
 

 On whom is the
 
 onus
 
 here ? The defendant admits that it is on him ; but he says the possession of the bond establishes every thing, until the contrary be proved. Therefore he contends, that it changes the burden of proof. But we think quite the contrary, as the facts appear here. We acknowledge that, in ordinary transactions between individuals, the possession of a bond by the obligee is not only evidence of its delivery but of its justice. But here the witnesses state, and the defendant admits, that he came into possession of this note— payable to himself nominally, for another — not as his proper-
 
 *468
 
 but merely to offer to the bank for discount; and that notes are necessarily in all cases entrusted to his custody for that purpose, and that in many instances he retains them for This, then, takes away in this Court all force from the possession ; for it would be monstrous, if every person, who sends in a note to a bank for discount, should be obliged to prove, that he did not receive the money. It would reverse the common course of business. Generally speaking, indeed, the negative might be readily proved even in those cases; because the cashiers and clerks are competent witnesses between the bank and the dealer. Nevertheless, we believe it is the invariable course in all banks and branches, that we have hitherto known, to pay money upon the discount of notes, only upon the written order of the person entitled to it. Such orders are so necessary to protect the rights of dealers and as vouchers for the paying officers, that they have received the name of checks, which appropriately expresses their office. But when, as in this case, the paper, upon which loans are made, is in the form of a note payable to the cashier himself, who thus gets by possession a right of action, which is irresistable at law, and he cannot be there called on to testify for a defendant, the necessity for some
 
 check
 
 on the cashier against unjust demands is so obvious, that one is astonished to find that it was ever omitted. We believe it is common to dispose of bills of exchange at the bank counter, that is to say, by a stranger, who has no regular account at the bank ; because bills are rather bought and sold by the ministerial officers than the subjects of proper discounts, by the directors. But it argues culpable carelessness, to be without any formal written check for the proceeds of ordinary discounts. And, above all, when one man claims -an authority to receive another man’s money. The bank was bound in good faith, when the plaintiff went to ask the defendant, whether he could prove the payment of the money to Mr. Blum to be able to say, “Yes — here is his check : or here is your order and his receipt on it.” Instead of that, the defendant could only say, “1 destroyed your order, but here is my book, which says
 
 *469
 
 Blum received the money;” and when the plaintiff was ing out for evidence on which he could charge Blum, if necessary, the defendant informed him, that he had no recollection of paying the money. So the defendant could not prove the payment, and the plaintiff would be completely at the mercy of the defendant and Blum. The plaintiff' has a right to say to the bank or to the defendant, it is your own fault, that the receipt of the money by Blum cannot be established, and as you have left me without remedy against him, you ought to make the loss your owti. It is true, that, if it appeared, that Blum actually received this money, he would be made to account lor it, and the plaintiff would be bound to look to him as his agent. But the question is, did he get it? He says he did not; and the defendant says he did. How can we judge between them ? But it is said, the defendant is supported by his books. But that is not so ; for he has no recollection, to be refreshed. The books do not sustain the defendant ; but he looks altogether to them. And here, again, wo must say, that, as a witness, the books are much less satisfactory than the defendant himself — for, plainly they are entitled to but little consideration. In the case of this very note, it is remarkable, that a gross error, either in fact or law, was committed ; for 92 days interest was on the 17th of September taken off a 90 days note dated the 10th September. Either the discount was entered as of the wrong day, (as Mr. Shober’s testimony renders probable) or usurious interest was taken. We endeavored to get the “ weekly return” of that week, but the bank has not put it in, for the reason alleged, that it has no details, but consists of mere generalities. Now it was because it deals in generals that \ve wanted it; in order that we might see, whether the
 
 aggregate
 
 of notes discounted that week, as then. returned, and the discount on them would include or exclude this note, which
 
 now
 
 appears on the books of the agency among the discounts of that week; and the withholding such a document affords a presumption, that its contents, if produced, would benefit the opposite party. But above all, such large and fluctuating surpluses, for such
 
 *470
 
 long periods, prove completely, that there was either such a of attention or skill in keeping the books, that no reli
 
 1
 
 &
 
 7
 
 anee can be placed on them. • Indeed, Mr. Shober says, the defendant tías often kept debts on his list, as parts of the assets, after they had been paid. Now, it is just as easy to suppose, that he entered the payment to Blum, when he made the list of discounts, upon putting to itself the money for that purpose, and afterwards forgetting it, as that he should receive a debt and forget to credit the debtor. The defendant was wrong, when hesaid his books could not be mistaken ; for he is obliged to own, that there are undiscovered errors in them to more than three times this debt.
 

 We do not take into consideration the evidence of Thom and Dobson, which raise opposing probabilities; for we do not decide the cause'upon the higher or lower personal credit of Mr. Shuman or Mr. Blum; because, without going into that, it is sufficient, if under the circumstances, the question of fact be left doubtful, to entitle the plaintiff to a decree. A bank, that pays money to any person as a loan, without a check or receipt, and especially pays the money of one man to another, without taking something to charge him, ought to lose it, unless the facts can be unquestionably established.
 

 Per, Curiam, Injunction perpetuated, with costs.